FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 18, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROGER W. FLOOK, JR.,<br><br>                    Petitioner,<br><br>    v.<br><br>RON HAYNES,<br><br>                    Defendant. | NO. 2:24-CV-0208-TOR<br><br>ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS |

BEFORE THE COURT is Petitioner Roger W. Flook Jr.'s 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. ECF No. 1. Petitioner is represented by Marla Leslie Zink of Luminata PLLC. Assistant Attorney General Keith A. Hines answered the Petition and filed relevant portions of the state record on behalf of Respondent. ECF Nos. 7, 8. The Court has reviewed the underlying record and the parties' briefing and is fully informed. For the reasons discussed below, the Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED**.

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 1

# BACKGROUND

Petitioner is under state custody at the Airway Heights Corrections Center where he is serving a sentence of 186 months to life for the crime of child molestation in the first degree. ECF No. 1 at 2. The underlying facts and procedural history, summarized by the Washington Court of Appeals on direct appeal, are as follows:

> Roger Flook and Martha Montenegro were husband and wife, married in 2010. Ms. Montenegro had two children from a previous marriage, A.S. and J.S., her daughter and son respectively. A.S. was 11 years old in June 2014. J.S. was one year younger.
>
> On June 6, 2014, Flook and Ms. Montenegro took A.S. and J.S. to Clarkston, Washington, for a church marriage retreat. The four stayed in a hotel room with one large bed. The four slept side by side, with Ms. Montenegro and Flook sleeping on the outsides, and J.S. next to Ms. Montenegro and A.S. next to Flook. In the middle of the night, A.S. awakened when Flook put his hand on her upper thigh. Flook removed his hand and replaced it on A.S.'s hip area. Flook continued to remove his hand and replace it on A.S.'s body, moving it under her pants and eventually under her underwear, touching her vaginal area. A.S. turned away from Flook and put her arm between her legs at which point Flook grabbed her arm and whispered "come on."
>
> A.S. eventually described the incident to a friend, C.S. Eventually, the incident was reported to Child Protective Services (CPS).
>
> On August 24, 2015, the Whitman County Sheriff's Office received a report from CPS that detailed A.S. being sexually assaulted by Flook. Sheriff Brett Myers was assigned to investigate and arranged to jointly interview A.S. with CPS. During the interview, A.S. described to Sheriff Myers how Flook had touched her.
>
> Sheriff Myers then interviewed Ms. Montenegro. She confirmed some details of A.S.'s story, including the sleeping arrangements in one bed and who slept next to whom. Ms. Montenegro left the interview and

returned with Flook the same day.  During the interview, Flook seemed to struggle to remember the incident, as well as a number of other incidents described by A.S. of Flook touching her inappropriately. Sheriff Myers later testified that Flook's demeanor was that of someone who did not want to be there and was uncomfortable being interviewed.

The State charged Flook with one count of first degree rape of a child and one count of first degree child molestation.  Following his arrest, Ms. Montenegro sold Flook's truck to Richard Chittenden, an acquaintance.  Two to three months later, Mr. Chittenden discovered a universal serial bus (USB) thumb drive that had been hidden under the truck's dashboard.  Mr. Chittenden discovered a cache of pornographic videos stored on the device.    Most of the videos were adult pornography, but two of the files were encoded differently.   Mr. Chittenden opened the videos and found they were voyeuristic, homemade videos of a young girl bathing.  Mr. Chittenden contacted Ms. Montenegro and played the videos for her and, at her request, sent the thumb drive to Sheriff Myers.

After receiving and reviewing the videos, Sheriff Myers obtained and executed a search warrant for the house where the videos were taken. By this time, Ms. Montenegro and the children had moved out of the house and the house was unoccupied.  Sheriff Myers went into the bathroom and confirmed the bathroom tile matched that shown in the video.  He also noticed a hole in the bathroom ceiling that matched the angle of where the video was shot.  Ms. Montenegro later testified only Flook had access to the attic above the ceiling, and he went up there a handful of times while they lived together.  She further testified J.S. did not have the ability to climb into the attic.

*Procedure and trial*

Before trial, Flook filed a motion to exclude evidence of his prior convictions.  The State responded it would not introduce Flook's prior identity theft and possession of stolen property convictions in its case-in-chief, but reserved the right to do so pursuant to ER 609 if Flook testified.  The trial court granted Flook's motion.

*A.S.'s testimony at issue on appeal*

During A.S.'s direct examination, the State asked her to describe times

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 3

Flook had touched her in a way that made her feel uncomfortable. Defense counsel objected to the narrative form of the question, and the trial court sustained the objection. The State then asked A.S. a series of leading questions, asking about each incident individually. Defense counsel objected to the leading questions, but the trial court overruled the objection. During A.S.'s cross-examination, defense counsel began to ask A.S. about details in the CPS report. The trial court interrupted, stating it would not allow A.S. to read the report without entering the report into evidence. The State responded that it would not object as long as the entire report was entered. Defense counsel did not request to admit the report. The same issue arose again through a different witness. Again, the State was willing to have the entire report admitted, but defense counsel did not request to admit the report.

*Ms. Montenegro's testimony at issue on appeal*

*1. J.S. and A.S.*

Defense counsel cross-examined Ms. Montenegro. In one line of questioning, defense counsel asked whether Ms. Montenegro once caught J.S. and A.S. playing sex games together. She responded, "Absolutely not true."

*2. Alex and A.S.*

In another line of questioning, defense counsel asked whether Ms. Montenegro once saw A.S. and a boy named Alex "doing inappropriate sexual things to one another at the park." She responded, "Never."

*3. Discussion with Mr. Flook's aunt*

In still another line of questioning, defense counsel implied that Ms. Montenegro had told Mr. Flook's aunt she did not believe A.S.'s allegations. On redirect, the State asked Ms. Montenegro what she told Mr. Flook's aunt about A.S.'s allegations. She replied, "I told her . . . about what happened that night that I believed A.S."

Defense counsel did not object to the question or Ms. Montenegro's answer.

*C.S.'s testimony at issue on appeal*

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 4

Defense counsel later cross-examined C.S., A.S.'s friend. Defense counsel asked whether A.S. ever talked to her about "sexual contact she was having with her boyfriend, Alex." The State objected. The trial court excused the jury, heard argument, and ruled the testimony was inadmissible under the rape shield statute.

*Mr. Flook's testimony at issue on appeal*

*1. Prior conviction involving dishonesty*

Flook elected to testify. On direct, Flook testified about a time when Ms. Montenegro and he went to Australia for a vacation.

During cross-examination, the State asked, "You were being investigated for identity theft at that time, correct?" Defense counsel objected and made an oral motion for mistrial, arguing the court had ruled Flook's prior convictions were inadmissible. The State responded that the question about Flook's identity theft conviction was appropriate under ER 609 because, by testifying, Flook put his credibility at issue. The trial court overruled defense counsel's objection and denied the motion for mistrial.

*2. Prior inconsistent statement of Ms. Montenegro*

On direct, defense counsel asked Flook about an incident involving A.S. and J.S. The State objected. The State noted Ms. Montenegro had denied that her two children were playing sex games.

Defense counsel responded:

> [T]he State is trying to portray A.S. as an innocent waif, we have—the jury should have an opportunity to hear all of the evidence.

Defense counsel made an offer of proof. Counsel offered that Flook would testify that he heard Ms. Montenegro and A.S. screaming and yelling in the bathroom. Ms. Montenegro then came out upset and said she caught A.S. and J.S. experimenting sexually and she physically disciplined A.S.

The State reiterated its objection based on the rape shield statute and added additional objections—hearsay and ER 404. Defense counsel did not respond to these additional objections. The court disallowed

the testimony.

*Jury verdict, conviction, and punishment*

The jury found Flook guilty of first degree child molestation and not guilty of first degree child rape. The trial court entered a judgment of conviction and sentenced Flook to 186 months to life incarceration and also imposed a series of community custody conditions, including

> 17. [He] [s]hall report to his supervising officer prior to entering into any romantic relationship with any person who has minor aged children.

> 18. He shall report his criminal history to any person, with minor aged children, with whom he is going to have a romantic relationship.

Flook timely appealed his conviction.

ECF No. 8-1 at 516-523.

The Washington State Court of Appeals, Division III, affirmed the conviction and sentence but remanded to modify two community custody conditions. *Id.* at 516. Flook filed a petition for review in the Washington Supreme Court. ECF No. 8-1 at 467-486. The Supreme Court denied review on November 4, 2020. *Id.* at 513.

On July 22, 2021, Flook filed a personal restraint petition ("PRP") in the Washington Court of Appeals. ECF No. 8-1 at 540. The Court of Appeals denied the petition on March 9, 2023. ECF No. 8-2 at 43-72. Flook sought discretionary review with the Washington Supreme Court, ECF No. 8-2 at 76, and the Deputy Commissioner of the Washington Supreme Court denied review on September 8,

2023.  ECF No. 8-2 at 216-221.  The Washington Supreme Court denied a motion to modify the Deputy Commissioner's ruling on January 3, 2024.  *Id.* at 223.  The Court of Appeals issued a mandate to the trial court on January 8, 2024.  *Id.* at 11.

Petitioner filed this federal 28 U.S.C. § 2254 habeas petition (ECF No. 1) on June 19, 2024, alleging eight grounds for relief:

(1)  Judicial Bias violated Flook's right to a fair trial under the Fourteenth Amendment

(2)  Admission of lustful disposition propensity evidence violated Flook's right to due process of law under the Fourteenth Amendment and right to present a defense under the Sixth Amendment

(3)  The trial court's exclusion of testimony about what the complaining witness's mother told him regarding her children and a witness's testimony that the complaining witness had engaged in sexual contact with a peer violated Flook's right to present a defense under the Sixth Amendment

(4)  The trial court erred in not granting a mistrial because the prosecution violated the motion in limine by bringing up Flook's prior convictions for identify theft, which violated Flook's right to a fair trial under the Fourteenth Amendment

(5)  Flook had ineffective assistance of counsel in violation of the Sixth Amendment because counsel (a) did not ask Flook about his convictions for identity theft on direct examination, (b) did not move to admit CPS reports and failed to substantiate their contents, and (c) allowed the prosecution to ask leading questions during a portion of the complaining witness's direct examination

(6)  Flook's rights were violated under the Fourth, Fifth, and Fourteenth Amendments when the trial court denied Flook's motion to suppress the thumb drive

(7)  Three witnesses opined on Flook's guilt, violating Flook's right to a jury trial under the Sixth Amendment

(8)  Cumulative trial errors denied Flook his due process right to a fair trial

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 7

ECF No. 1 at 5-21 (claim 1), 21-23 (claim 2), 23-27 (claim 3), 27 (claim 4), 27-32 (claim 5), 33 (claim 6), 34-35 (claim 7), 35-36 (claim 8).

## NO EVIDENTIARY HEARING REQUIRED

"[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)) (evidentiary hearing is not required where the petition raises solely questions of law or where the issues may be resolved on the basis of the state court record). Indeed, review is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) ("[R]eview under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). Because federal habeas is "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal," the types of errors redressable under § 2254(d) should be apparent from the record. *Ryan v. Gonzales*, 568 U.S. 57, 75 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)). Here, Petitioner has not established the limited circumstances for entitlement to an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2).

Accordingly, the Court rejects any suggestion for an evidentiary hearing.

## CLAIM EXHAUSTION

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971).  A petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).  This exhaustion requirement is "grounded in principles of comity" as it gives states "the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

To satisfy the exhaustion requirement, a federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits)).  The petitioner must present the claims to the state's highest court even where such review is discretionary.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-46 (1999).  It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*,

1    513 U.S. at 365-66.  Rather, each claim must be presented to the state's highest

2    court based upon the same federal legal theory and the same factual basis as the

3    claim is subsequently asserted in federal court.  *Hudson v. Rushen*, 686 F.2d 826,

4    829-30 (9th Cir. 1982).  The habeas petitioner must include reference to a specific

5    federal constitutional guarantee, as well as a statement of the facts entitling the

6    petitioner to relief.  *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996);

7    *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

8        Respondent argues Flook failed to properly exhaust his state remedies as to

9    Claims 3, 4, and 5(b) by failing to fairly present the claims to the Washington

10   Supreme Court but concedes the remaining claims were properly exhausted.  ECF

11   No. 7 at 12.  Flook concedes claim 5(b) was not properly exhausted but contends

12   Claims 3 and 4 were properly exhausted.  ECF No. 14 at 2.

13   **Claim Three**

14       Regarding Claim 3, Respondent argues Flook improperly presented the

15   claim to the Washington Supreme Court solely through incorporation by reference

16   of his lower court brief.  ECF No. 7 at 49.  Respondent relies on Flook's request

17   for discretionary review by the Washington Supreme Court as to his PRP.  ECF

18   No. 8-2 at 110-111.  However, a petitioner may exhaust state remedies either

19   through direct appeal or, if state law provides, an alternative route of review

20   brought before the state's highest court.  *Acosta-Huerta v. Estelle*, 7 F.3d 139, 141

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 10

(9th Cir. 1992). Flook presented his claims to the Washington Supreme Court on direct appeal and adequately presented the precise claims and underlying factual basis as he does so here. ECF Nos. 8-1 at 478-482, 1 at 23-27. Therefore, Flook properly exhausted his state remedies as to Claim 3.

**Claim Four**

With regard to Claim 4, Respondent argues Flook never presented the claim as a federal claim to the Washington Supreme Court but rather only discussed the prosecution's violation of a motion in limine. ECF No. 7 at 49. Flook argues he did raise the issue in his petition for review with the Washington Supreme Court, including its impact on his constitutional right to a fair trial. ECF No. 14 at 14. On direct appeal, Flook presented Claim 4 as follows:

> **3. The Court should review, as an issue of substantial public interest, whether under the novel circumstances occurring below highly prejudicial other misconduct evidence should have been excluded.**
>
> The Court of Appeals erred in affirming the trial court's admission of Flook's prior conviction, finding it did not violate the trial court's ruling on Flook's motion in limine. The Court of Appeals did not consider that the State affirmatively stated it would seek permission outside the presence of the jury before admitting any prior charged misconduct. The Court also did not consider the scope of the trial court's ruling on pretrial motions, where it (a) explicitly excluded all prior convictions from the State's case-in-chief, (b) excluded a prior third degree rape conviction as impeachment evidence, and (c) was silent as to the admission or exclusion of other convictions to impeach Flook if he testified. With this full context from the record in mind, this Court should accept review because these facts raise an issue of substantial public interest.

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 11

ECF No. 8-1 at 482-483.

Flook did not explicitly state the trial court's failure to grant a mistrial due to the prosecution's violation of the motion in limine deprived him of a Sixth Amendment right to a fair trial. Flook nevertheless contends he fairly presented the claim through his claim that cumulative error deprived him of a fair trial in addition to addressing the issue in the lower court appellate briefing. ECF No. 14 at 14. Flook's cumulative error claim presented to the Washington Supreme Court stated

> **6. In granting review, the Court should also consider whether cumulative error deprived Flook of a constitutionally fair trial.**
>
> The Court should also grant review to determine the important constitutional question whether any of the above errors viewed together, even if not individually, deprived Flook of a fair trial. *See* App't's Op. Br. at 54-56; U.S. Const. amend. XIV; Const. art. I, § 3; *e.g.*, *Williams v. Taylor*, 529 U.S. 362, 396-98, 120 S. Ct 1479, 146 L. Ed. 2d 435 (2000); *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984).

ECF No. 8-1 at 485.

"[A] petitioner has 'fairly presented' a claim not named in a petition if it is 'sufficiently related' to an exhausted claim. Claims are 'sufficiently related' or 'intertwined' for exhaustion purposes when, by raising one claim, the petition clearly implies another error." *Wooten*, 540 F.3d at 1025. Flook's cumulative error claim does not clearly imply he was making a Fourteenth Amendment claim, or any federal constitutional claim, as to his third claim (Claim Four) presented in

1    his state petition.  Other than his third claim, Flook explicitly addressed and cited

2    the alleged constitutional violations in every other claim he presented in his

3    petition to the Washington Supreme Court.  Flook's decision to present the third

4    claim devoid of such language but rather phrased as "an issue of substantial public

5    interest" without reference to any state or federal law suggests Flook did not intend

6    to present it as a constitutional claim.  Nor does Flook's cumulative error claim

7    encompass any facts or discussion related to Flook's third claim that intertwined

8    the two as to fairly present the substance of his federal claim to the state.

9        Furthermore, Flook's contention that the claim was addressed in the lower

10    court appellate briefing is without merit.  ECF No. 14 at 14.  "[A] state prisoner

11    does not 'fairly present' a claim to a state court if that court must read beyond a

12    petition or a brief (or a similar document) that does not alert it to the presence of a

13    federal claim in order to find material, such as a lower court opinion in the case,

14    that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  The Court finds Flook

15    failed to exhaust Claim Four.

16        An unexhausted claim may nevertheless be technically exhausted where "the

17    court to which the petitioner would be required to present his claims in order to the

18    meet the exhaustion requirement would now find the claims procedurally barred."

19    *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  Such claims are considered

20    procedurally defaulted and are barred from federal habeas review unless the

1  petitioner can "demonstrate cause for the default and actual prejudice as a result of

2  the alleged violation of federal law or demonstrate that failure to consider the

3  claims will result in a fundamental miscarriage of justice." *Id.* at 750.

4      Respondent argues Flook's unexhausted claims are now procedurally

5  defaulted pursuant to Washington law. ECF No. 7 at 51. Indeed, under RCW

6  10.73.090, "No petition or motion for collateral attack on a judgment and sentence

7  in a criminal case may be filed more than one year after the judgment becomes

8  final if the judgment and sentence is valid on its face and was rendered by a court

9  of competent jurisdiction." A judgment becomes final on the last of the following

10 dates:

11      (a) The date it is filed with the clerk of the trial court;

12      (b) The date that an appellate court issues its mandate disposing of a
           timely direct appeal from conviction; or

13
        (c) The date that the United States Supreme Court denies a timely
14             petition for certiorari to review a decision affirming the conviction
               on direct appeal. The filing of a motion to reconsider denial of
15             certiorari does not prevent a judgment from becoming final.

16 RCW 10.73.090; *see also* RCW 10.73.100 (listing when one-year limit is not

17 applicable).

18      The Washington Court of Appeals issued its mandate November 4, 2020.

19 ECF No. 8-1 at 515. Flook therefore cannot properly exhaust Claim Four as it has

20 been more than one year since the Court of Appeals issued its mandate.

1    Additionally, under RCW 10.73.140, "[i]f a person has previously filed a

2    petition for personal restraint, the court of appeals will not consider the petition

3    unless the person certifies that he or she has not filed a previous petition on similar

4    grounds, and shows good cause why the petitioner did not raise the new grounds in

5    the previous petition." *See also* RAP 16.4(d). Thus, Flook cannot file a successive

6    collateral challenge.

7    Flook has procedurally defaulted on Claim Four by failing to fairly present it

8    to the Washington Supreme Court. Therefore, the claim is barred from federal

9    habeas review unless Flook can demonstrate good cause for the default and actual

10    prejudice from the alleged federal law violation or that a fundamental miscarriage

11    of justice will result if the claim is not considered. *Coleman*, 501 U.S. at 750. To

12    show "cause," a petitioner must ordinarily demonstrate "that some objective factor

13    external to the defense impeded counsel's efforts to comply with the State's

14    procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show

15    "prejudice," a petitioner "must shoulder the burden of showing, not merely that

16    errors at his trial created a *possibility* of prejudice, but that they worked to his

17    *actual* and substantial disadvantage, infecting his entire trial with error of

18    constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982)

19    (emphases in original).

20    Finally, a fundamental miscarriage of justice may be shown in limited

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 15

circumstances where the "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496. As in, "it is more likely that not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" but for the illegally admitted evidence or wrongfully excluded evidence or new evidence that was not available at trial. *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995).

Flook has failed to demonstrate that any external factor impeded him from exhausting Claim Four in state court or that a failure to consider the claim in federal habeas review will result in a fundamental miscarriage of justice. Accordingly, the Court dismisses Claim 4 as procedurally defaulted.

**Claim Five**

With regard to Claim 5(b), Petitioner concedes in his reply briefing it was not exhausted and states he withdraws the claim. ECF No. 14 at 2. Therefore, claim 5(b) is dismissed. The Court now turns to the merits of Flook's remaining allegations.

**DISCUSSION**

## I.    Legal Standard

Disposition of a federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, effective April 24, 1996. *Van Tran v. Lindsey,* 212 F.3d 1143 (9th Cir.

2000).  Under AEDPA, a court will not grant a petition for writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner can show that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Section 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation omitted).

A rule is "clearly established Federal law" within the meaning of section 2254(d) only if it is based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)).  "A state-court decision is 'contrary to' the clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (quoting *Williams v. Taylor*, 529 U.S.

362, 405-06 (2000)).  The state court need not cite to the controlling Supreme

Court precedent, nor need it even be aware of the relevant case law, "so long as

neither the reasoning nor the result of the state-court decision contradicts them."

*Id.*  An "unreasonable application of" clearly established federal law is one that is

"objectively unreasonable, not merely wrong; even clear error will not suffice."

*Woodall*, 134 S.Ct. at 1702 (internal quotation marks omitted).  "Rather, as a

condition for obtaining habeas corpus from a federal court, a state prisoner must

show that the state court's ruling on the claim being presented in federal court was

so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded

disagreement." *Id.* (brackets omitted) (quoting *Richter*, 562 U.S. at 101).  Under

the harmless error standard of review adopted by the Supreme Court, even if a

reviewing court finds constitutional error, the challenged error must have caused

"actual prejudice" or had "substantial and injurious effect or influence" in

determining the jury's verdict in order for the court to grant habeas relief.  *Brecht*

*v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

> If [the section 2254(d)] standard is difficult to meet, that is because it
> was meant to be. . . . It preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that the
> state court's decision conflicts with [the Supreme] Court's precedents.
> It goes no further.  Section 2254(d) reflects the view that habeas corpus
> is a "guard against extreme malfunctions in the state criminal justice
> systems," not a substitute for ordinary error correction through appeal.
> As a condition for obtaining habeas corpus from a federal court, a state

1
2
3

prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

4

*Richter*, 562 U.S. at 102-03 (citations omitted).

5
6
7
8
9
10
11
12
13

The petitioner bears the burden of showing that the state court decision is contrary to, or an unreasonable application of, clearly established precedent. *See Cullen v. Pinholster*, 563 U.S. at 181-82 (2011) (citing *Woodford*, U.S. 537 at 25). In conducting its habeas review, a federal court looks "to the last reasoned decision of the state court as the basis of the state court's judgment." *Merolillo v. Yates*, 663 F.3d 444, 453 (9th Cir. 2011) (citation omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

14

### **Claim One: Judicial Bias**

15
16
17
18
19
20

Flook argues Judge Gallina's judicial bias violated his Fourteenth Amendment right to a fair trial. ECF No. 1 at 5-21. Flook puts forth six factual bases to support his claim: Gallina's interests in the subject matter of Flook's trial intersected with his own; Gallina's sexual misconduct toward his personnel intertwined with his work on Flook's case; he assisted prosecution in questioning witnesses; his rulings largely favored the prosecution; one of his rulings concerned

1  whether one of his victims would appear during Flook's trial; and he inserted

2  sexualized comments into the trial.  ECF No. 2 at 5.

3      "A fair trial in a fair tribunal is a basic requirement of due process.  Fairness

4  of course requires an absence of actual bias in the in the trial of cases.  But our

5  system of law has always endeavored to prevent even the probability of

6  unfairness." *In re Murchison*, 349 U.S. 133, 136 (1955).  To succeed on a judicial

7  bias claim, the petitioner must overcome the presumption that the trial judge acted

8  with "honesty and integrity." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  The

9  petitioner need not show actual bias, only that the "probability of actual bias on the

10  part of the judge or decisionmaker [was] too high to be constitutionally tolerable."

11  *Id.*

12      Flook argues both that the last reasoned state court decision was contrary to

13  clearly established federal law and was based on an unreasonable determination of

14  the facts.  ECF No. 2 at 8.  Flook relies on the Washington Supreme Court Deputy

15  Commissioner's six page denial of Flook's motion for discretionary review as the

16  last reasoned state court decision.  ECF No. 14 at 4.  "[A] Washington Supreme

17  Court order denying review of a PRP, when it is reasoned and discusses the merits,

18  is an 'adjudication on the merits' that may be reviewed by federal courts under

19  AEDPA." *Barker v. Fleming*, 423 F.3d 1085, 1092 (9th Cir. 2005).  The Court

20  concludes the Commissioner's denial of Flook's motion for review was the last

reasoned state court decision as it directly addressed the merits of Flook's judicial

bias claim.  ECF No. 8-2 at 216-220.   Additionally, "AEDPA generally requires

federal courts to review one state decision" thus federal courts "should review the

last decision in isolation and not in combination with decisions by other state

courts."  *Barker*, 423 F.3d at 1093.

Flook first challenges the legal standards as set forth by the Washington

Supreme Court as being contrary to clearly established federal law.  In addressing

Flook's judicial bias claims, the Washington Supreme Court states, "Flook mainly

argues that Judge Gallina, who presided over his trial, was biased and violated the

appearance of fairness because for years he committed acts of sexual misconduct

against courthouse staff that ultimately led to pleas of guilty to criminal charges in

2022."  ECF No.8-2 at 216-217.  The Washington Supreme Court goes on to

explain

> Judge Gallina's misconduct has been raised in other cases, which have
> held that allegations against the judge unforeseen at the time of trial do
> not alone undermine the fundamental underpinnings of the judge's
> verdicts and sentences, that the allegations do not require relief from a
> judgment and sentence unless they bear a specific relationship to the
> proceedings in question, and that no relief on the basis of violation of
> the appearance of fairness is justified absent some showing of rulings
> by the judge that exhibit bias or partiality related to the allegations.  *See
> In re Pers. Restraint of Ayerst,* 17 Wn. App. 2d 356, 363-65, 486 P.3d
> 943 (2021), *aff'd in part and rev'd in part on other grounds by In re
> Pers. Restraint of Lewis*, 200 Wn.2d 848, 523 P.3d 760 (2023); *State v.
> Williams*, 15 Wn. App. 2d 841, 848-50, 480 P.3d 1145 (2020).  Flook's
> reasoning that Judge Gallina had an incentive to condemn Flook's
> behavior because it ensured a good relationship with the State and

investigators and provided cover for his own criminal misconduct is purely speculative, which is insufficient to show violation of the appearance of fairness. *Williams*, 15 Wn. App. 2d at 849. Nothing in the record suggests Judge Gallina was aware of the State's investigation of him while the current prosecution was proceeding, and there is nothing beyond speculation to suggest he was laboring under a conflict between his judicial duties and a desire to avoid prosecution, such as to overcome the presumption the judge performed his functions without bias or prejudice. *See Ayerst*, 17 Wn. App. 2d at 365.

ECF No. 8-2 at 217-218.

Flook identifies three standards set forth by the Washington Supreme Court as contrary to the clearly established federal test for judicial bias: (1) "allegations against the judge unforeseen at the time of trial do not alone undermine the fundamental underpinnings of the judge's verdicts and sentences"; (2) "allegations do not require relief from a judgment and sentence unless they bear a specific relationship to the proceedings in question"; and (3) "no relief on the basis of violation of the appearance of fairness is justified absent some showing of rulings by the judge that exhibit bias or partiality related to the allegations." ECF No. 8-2 at 217.

Flook first argues the Washington Supreme Court's standard that judicial bias only exists where a judge has actual knowledge of an ongoing or impending investigation is not supported by any Supreme Court decision. ECF No. 14 at 5. However, the phrasing Flook relies on makes no such statement. The Washington Supreme Court stated, "allegations against the judge unforeseen at the time of trial

1   *do not alone* undermine the fundamental underpinnings of the judge's verdicts and

2   sentences." *Id.* (emphasis added). Nowhere does the Washington Supreme Court

3   state a judge *must* have actual knowledge of an investigation to demonstrate

4   judicial bias, only that a lack of such knowledge alone is insufficient.

5       Flook's reliance on *Echavarria v. Filson*, 896 F.3d 1118, 1131 (9th Cir.

6   2018) is also misplaced. The presiding judge in that case had been previously

7   investigated by the FBI agent the petitioner was accused of killing and the judge

8   knew of this prior investigation. *Echavarria*, 896 F.3d at 1132. Thus, the

9   constitutionally intolerable risk of bias came from answering in the affirmative the

10   question of "whether an average judge in Judge Lehman's position would have

11   feared that the FBI might reopen its investigation or renew its advocacy for state

12   prosecution if he made rulings favorable to Echavarria." *Id.* The facts of that case

13   are dissimilar to here, as the Washington Supreme Court also explained in its

14   decision. ECF No. 8-2 at 218-219.

15       Flook further argues the conclusion that the allegations against Gallina were

16   unforeseeable at the time of trial was based on an unreasonable determination of

17   the facts. Flook asserts Gallina's investigation and charges were objectively and

18   subjectively foreseeable to both Gallina and the county at the time of trial. ECF

19   No. 14 at 6. However, the Washington Supreme Court's decision that the

20   allegations were unforeseeable relied on the determination that none of the

1  provided facts suggested Gallina knew of the State's investigation against him at

2  the time of Flook's trial.  ECF No. 8-2 at 218.  Flook does not provide any factual

3  basis suggesting Gallina was aware of the investigation and Flook's speculative

4  argument that any investigation was subjectively foreseeable to Gallina does not

5  render the Washington Supreme Court's fact determination unreasonable.

6          Next, Flook argues the second and third state-court test put forth by the

7  Washington Supreme Court do not match clearly established federal law because

8  no Supreme Court case requires that allegations against a judge be tied to a

9  defendant's case or a showing that a judge's rulings exhibit bias or partiality

10  related to the allegations.  ECF No. 14 at 7.  Flook reiterates that actual bias need

11  not be present to show a constitutionally intolerable risk of bias.  *Id.*  While Flook

12  is correct in his reiteration, his interpretation of the Washington Supreme Court's

13  statements is incorrect.

14          As an initial matter, the absence of any Supreme Court holding matching a

15  state-court test does not automatically render the state-court decision contrary to

16  clearly established federal law.  Rather a state court decision is contrary "if

17  the state court applies a rule that contradicts the governing law set forth" by the

18  Supreme Court or involved an objectively unreasonable application of clearly

19  established federal law.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).  Flook

20  fails to demonstrate either in this case.

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 24

First, the Washington Supreme Court's standard that "allegations do not require relief from a judgment and sentence unless they bear a specific relationship to the proceedings in question" aligns with prior Supreme Court holdings.  In *Williams v. Pennsylvania*, 579 U.S. 1 (2016), the Supreme Court held that a judge's earlier direct role in the criminal prosecution of the defendant created an unconstitutional risk of bias.  *Williams*, 579 U.S. at 8.  The Court explained that "[t]his objective risk of bias is reflected in the due process maxim that 'no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.'"  *Id.* at 8-9 (quoting *In re Murchison,* 349 U.S. 133, 136 (1955)).  This follows the Court's much earlier holding in *Tumey v. State of Ohio*, 273 U.S. 510 (1927),

> All questions of judicial qualification may not involve constitutional validity.  Thus matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion.  But it certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case.

*Tumey*, 273 U.S. at 523 (internal citation omitted).  Thus, the state court's ruling that allegations alone do not require relief from judgment without the presence of some conflict of interest with the proceedings at issue is not contrary to Supreme Court precedent.

1    Finally, Flook's objection to the third state standard set forth by the

2    Washington Supreme Court has no merit because the standard addressed Flook's

3    nonconstitutional claim under Washington State's appearance of fairness doctrine.

4    The "appearance of fairness doctrine, though related to concerns dealing with due

5    process considerations, is not constitutionally based," rather, it is meant to provide

6    greater protection than the minimal constitutional due process protections afforded

7    for a fair hearing. *City of Bellevue v. King Cnty. Boundary Rev. Bd.*, 90 Wash. 2d

8    856, 863 (1978); *see also State v. Blizzard*, 195 Wash. App. 717, 725 (2016).

9    Moreover, Flook explicitly presented his appearance of fairness claim to the

10    Washington Court of Appeals and Supreme Court in his PRP as a

11    nonconstitutional claim. ECF Nos. 8-1 at 542, 8-2 at 84-85.

12    Flook further argues that the Washington Supreme Court unreasonably

13    determined the facts by failing to find Gallina's misconduct was intertwined with

14    Flook's case, and his rulings exhibited a risk of partially or bias. ECF No. 14 at

15    8,9. The Washington Supreme Court's decision relied on the factual determination

16    that nothing in the record indicated Gallina was aware of an investigation against

17    him during Flook's trial, and "there is nothing beyond speculation to suggest he

18    was laboring under a conflict between his judicial duties and a desire to avoid

19    prosecution, such as to overcome the presumption the judge performed his

20    functions without bias or prejudice." ECF No. 8-2 at 218. Flook provides

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 26

examples of ways in which Gallina's misconduct was intertwined with Flook's

trial such as Gallina's sexual abuse against employees in the courthouse where

Flook's trial occurred, the female court's staff safety plan to avoid Gallina's

predatory behavior, the reports of abuse around the time of Flook's trial, and

Gallina's inappropriate private and public communications during the trial.  ECF

No. 14 at 8-9.  However, a review of the record cited reveals none of these

examples demonstrate that Gallina either knew of the investigation against him or

suffered from a conflict of interest that would Washington Supreme Court's factual

determinations unreasonable.

Additionally, the Washington Supreme Court directly addressed Flook's

argument that several of Gallina's rulings were evidence of bias by explaining

rulings are almost never evidence of bias and "Flook does not demonstrate that the

judge's rulings were of such a nature overall as to suggest they were based on bias

rather than a neutral application of the law."  ECF No. 8-2 at 219-20.

The Washington Supreme Court did not make an unreasonable

determination the facts in light of the evidence under 28 U.S.C. § 2254(d).

Therefore, the Court denies Claim One.

**Claim Two: Admission of Lustful Disposition**

Flook contends the admission of the lustful disposition propensity evidence

violation his Fourteenth Amendment right to due process and Sixth Amendment

1   right to present a defense.  ECF No. 1 at 21-23

2       The trial court admitted evidence during Flook's trial that tended to show

3   Flook's "lustful disposition" towards A.S. including evidence that he had

4   previously patted A.S. on her bottom, showed her pornographic cartoons and

5   discussed topics sexual in nature with her, and had A.S. sit on his lap.  ECF No. 8-

6   3 at 161-162, 164.  The trial court also admitted a video taken of A.S. bathing in

7   the nude, again for the purpose of demonstrating a "lustful disposition" by Flook.

8   *Id.* at 189-190.

9       After Flook's conviction, the Washington Supreme Court held in *State v.*

10  *Crossguns*, 199 Wash. 2d 282 (2022) that prior bad acts characterized as proof of

11  "lustful disposition" was not a distinct permissible purpose for admitting evidence.

12  *Crossguns*, 199 Wash. 2d at 294.   However, the court noted that evidence

13  admitted under the "lustful disposition" label may be admissible under Washington

14  Rule of Evidence ("ER") 404(b) for some other proper purpose such as to show

15  intent, motive, or opportunity.  *Id.*

16      In Flook's PRP, he requested relief from judgment based on the improper

17  use of evidence to show "lustful disposition" and alternatively argued that the trial

18  court violated his constitutional rights by admitting the evidenced under ER

19  404(b).  The Washington Court of Appeals found the trial court had erroneously

20  admitted the prior bad acts evidence at issue for the sole purpose of showing

Flook's "lustful disposition" toward A.S., however, concluded Flook had failed to demonstrate that the admission resulted in a fundamental defect requiring reversal.

> Because he is requesting relief on a nonconstitutional basis, Flook must show more than error and more than prejudice from that error. Instead, Flook is entitled to relief only "when 'the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" . . . Flook does not argue that he has met the fundamental defect standard. Although the admission of the evidence as lustful disposition was error, since the evidence may have been admitted under another exception of ER 404(b), Flook does not show prejudice, much less a complete miscarriage of justice.

ECF No. 8-2 at 70-71 (internal citations omitted).

The Court of Appeals declined to address Flook's constitutional arguments on the basis he failed to provide support for his contention or provide any citation to legal authority. *Id.* at 71 n.8. The Washington Supreme Court similarly addressed Flook's nonconstitutional argument that the wrongfully admitted evidence constituted a fundamental defect resulting in a complete miscarriage of justice under Washington law. *Id.* at 220. However, the Washington Supreme Court did address Flook's constitutional claims in a single sentence stating, "And to the extent Flook claims the error was constitutional in nature, he does not show, as he must, that he was actually and substantially prejudiced." *Id.*

Flook argues the Washington Supreme Court's summary denial to review his PRP unreasonably adjudicated his "lustful disposition" claim as nonconstitutional error and unreasonably determined the facts thereby requiring *de*

*novo* review.  ECF No. 2 at 9.  The Court disagrees.  First, Flook requested discretionary review by the Washington Supreme Court for both his nonconstitutional claim that the evidentiary error caused a fundamental defect under Washington law and his constitutional claim that the admitted evidence constituted prohibited propensity evidence that caused actual and substantial prejudice in violation of Flook's due process rights.  ECF No. 8-2 at 107-110.  The Washington Supreme Court addressed both.  Thus, Flook's argument that his "lustful disposition" claim was unreasonably adjudicated as a nonconstitutional claim is without merit.  The Washington Supreme Court's single sentence addressing Flook's constitutional claims was an adjudication on the merits.

The Court now turns to Flook's argument that the Washington Supreme Court unreasonably determined the facts.  Flook argues the admitted "lustful disposition" evidence was prejudicial because it was emotionally charged, invited the jury to make a propensity inference, and the evidence was highly correlated to the charges at trial.  ECF No. 2 at 11-12.  Flook relies heavily on *Kipp v. Davis*, 971 F.3d 939 (9th Cir. 2020) where the Ninth Circuit held a California defendant charged with murder and attempted rape received an unfair trial after propensity evidence in the form of an unadjudicated murder and rape was introduced under California Evidence Code § 1101.  However, the facts and findings in *Kipp* are inapposite to this case.  The prior incidents in *Kipp* involved a different victim, and

the circumstances surrounding each victim's death "were too dissimilar to support

an inference of connection by common identity or intent." *Kipp*, 971 F.3d at 955.

The Ninth Circuit explained that while no due process violation would be found

"where there *were* permissible inferences that the jury could draw from the

challenged evidence," only an impermissible inference of propensity was available

to the jury in that case. *Id.* at 956-57 (emphasis in original).

In this case, the evidence at issue all concerned prior acts by Flook toward

A.S. that were sexual in nature. A jury could use such evidence of prior

misconduct to draw a permissible inference of Flook's intent. However, even if

the only available inference to be drawn was propensity, the Ninth Circuit

recognized in *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001) that "courts

have historically allowed propensity evidence to reach the jury in sex offense

cases." *LeMay*, 260 F.3d at 1026. "[S]uch evidence will only *sometimes* violate

the constitutional rights to a fair trial, if it is of no relevance, or if its potential for

prejudice far outweighs what little relevance it might have" under Rule 403. *Id.* at

1027 (emphasis in original). Here, the admitted evidence was indisputably

relevant and Flook's arguments do not support finding that any prejudicial effect

far outweighed the relevancy of the evidence. Like the evidence that Flook

committed the charged crime, prior acts of sexual misconduct, especially toward a

child, will always be inflammatory and emotionally charged. *See LeMay*, 260 F.3d

1    at 1030.  Therefore, the Court finds the Washington Supreme Court did not make

2    an unreasonable determination that Flook failed to show he was actually and

3    substantially prejudiced by the admission of the "lustful disposition" evidence.

4    **Claim Three: Exclusion of Testimony**

5       Flook argues his Sixth Amendment right to present a defense was violated

6    when he was prohibited from presenting evidence to impeach A.S.'s mother, Ms.

7    Montenegro, and evidence that A.S. was experimenting sexually with her

8    boyfriend.  ECF No. 2 at 13, 16.  Flook argues the last reasoned state court

9    decision unreasonably applied the law, unreasonably determined the facts, and

10   applied a state-court re-litigation bar.  *Id.* at 13.

11      Flook raised this claim both on direct appeal and in his PRP.  The Court of

12   Appeals addressed the merits of the claim on direct appeal finding there was no err

13   by the trial court.  ECF No. 8-1 at 450-451.  Flook subsequently raised the same

14   claim in his PRP, but the Court of Appeals declined to address the issue on the

15   merits pursuant to Washington state's relitigation bar on collateral relief.

16      A petitioner may not raise a ground for relief that was already raised
        and rejected on direct appeal unless the interests of justice require

17      reconsideration of the issue.  *In re Pers. Restraint of Knight*, 196 Wn.2d
        330, 341, 473 P.3d 663 (2020).  A ground is a "distinct legal basis for

18      granting relief."  *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688,
        717 P.2d 755 (1986), *abrogated on other grounds by In re Pers.

19      Restraint of Gentry*, 179 Wn.2d 614, 316 P.3d 1020 (2014). This
        relitigation bar on collateral relief cannot be avoided "'merely by

20      supporting a previous ground for relief with different factual allegations
        or with different legal arguments.'"  *Yates*, 177 Wn.2d at 17 (quoting *In*

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 32

*re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004)). Doubts as to whether a ground raised in a petition is different than a ground raised on direct appeal should be resolved in favor of the petitioner. *Taylor*, 105 Wn.2d at 688.

On direct appeal, we addressed Flook's argument that the trial court violated his Sixth Amendment right to present a defense by excluding his testimony regarding Montenegro's statements about AS and JS experimenting. Flook claimed that the trial court should not have excluded the evidence under the rape shield statute. *Flook*, No. 36610-3-III, slip op. at 7. In his petition, Flook claims the exclusion of this evidence was an abuse of discretion because the trial court's decision was based on an erroneous recitation of facts on the record, and this violated his right to present a defense because he was prevented from impeaching Montenegro. Flook does not create a new ground merely by reframing a ground previously raised with different facts or legal arguments.

This issue was already raised and rejected on direct appeal. Moreover, Flook does not argue that the interests of justice require this court to reconsider this issue.

Accordingly, we decline to address it here.

ECF No. 8-2 at 67-68.

Where a state court decision rejecting a claim adequately rests on a state law ground that is independent of federal law, such a state procedural rule, federal habeas review is ordinarily unavailable. *Guillory v. Allen*, 38 F.4th 849, 855 (9th Cir. 2022). Therefore, Flook's third claim as brought in his PRP is procedurally barred from federal review for habeas relief. *See Guillory v. Allen*, 38 F.4th 849, 856 (9th Cir. 2022). However, the Court can consider whether the state court's rejection of Flook's Sixth Amendment claim as presented on direct appeal

provided any basis for federal habeas relief. *Id.* at 859.

On direct appeal Flook presented the same argument that his Sixth Amendment right to present a defense was violated where he was excluded from presenting evidence of A.S. and her brother sexually experimenting to impeach Montenegro and evidence that A.S. had engaged in sexual contact with her boyfriend, Alex. ECF No. 8-1 at 449. The Washington Court of Appeals upheld the trial court's exclusion pursuant to Washington's rape shield statute, RCW 9A.44.020(2).

> Defense counsel explained the purpose of his client's testimony was to dispel the notion that A.S. was an innocent waif. We infer defense counsel's purpose was similar when he tried to elicit testimony from C.S. that A.S. had told C.S. that she and Alex had engaged in sexual contact. The trial court excluded both proffers based on RCW 9A.44.020(2), the rape shield statute, which provides in relevant part:
>
>> Evidence of the victim's past sexual behavior including but not limited to the victim's ... general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility ....
>
> Whether 11-year-old A.S. was an innocent waif or not, the law still protects her from sexual contact from an adult. Flook's purpose for admitting A.S.'s purported sexual misconduct was irrelevant. We conclude the trial court did not err by excluding the evidence.

ECF No. 8-1 at 450-451.

In a footnote, the Court of Appeals also explained

> On appeal, Flook argues his purpose for admitting the conduct between J.S. and A.S. was to establish J.S. sexually desired his sister and was the person who videotaped his sister in the bathtub. We reject this argument for two reasons. First, this was not the argument put forth by

1    defense counsel when the State objected to Flook's testimony.  Second,
2    it is absurd to suggest a 10-year-old boy videotaped his naked sister,
     using a video camera—there was no evidence he owned—from an
3    overhead attic he could not access and then hid the recording in a truck
     he did not drive.

4    *Id.* at 451.

5       Flook provides no argument or basis to conclude the Court of Appeals'

6    decision was contrary to clearly established federal law or based on an

7    unreasonable determination of the facts.  He merely presents the same argument

8    already rejected by the state court.  Therefore, Flook's Sixth Amendment right to

9    present a defense claim fails.

10      ### Claim Five: Ineffective Assistance of Counsel

11      Flook argues that his trial counsel delivered ineffective assistance of counsel

12   in violation of Flook's Sixth Amendment right when counsel (a) did not ask Flook

13   about his convictions for identity theft on direct examination and (c) allowed the

14   prosecution to ask leading questions during direct examination of A.S.  ECF No. 1

15   at 27-28.

16      Claims of ineffective assistance of counsel are governed by the principles

17   laid out in *Strickland v. Washington*, 466 U.S. 668 (1984).  "The benchmark for

18   judging any claim of ineffectiveness must be whether counsel's conduct so

19   undermined the proper functioning of the adversarial process that the trial cannot

20   be relied on as having produced a just result." *Id.* at 686.  To prevail under

1    *Strickland* a defendant must demonstrate first that "counsel's representation fell

2    below an objective standard of reasonableness," and second that "there is a

3    reasonable probability that, but for the counsel's unprofessional errors, the result of

4    the proceeding would have been different." *Id.* at 690, 694.  "Failure to satisfy

5    either prong of the *Strickland* test obviates the need to consider the other." *Rios v.*

6    *Rocha,* 299 F.3d 796, 805 (9th Cir.2002).

7         "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v.*

8    *Kentucky*, 559 U.S. 356, 371 (2010).  "Even under *de novo* review, the standard for

9    judging counsel's representation is a most deferential one. . . . Establishing that a

10    state court's application of *Strickland* was unreasonable under § 2254(d) is all the

11    more difficult." *Richter*, 562 at 105.  Both § 2254(d) and *Strickland* create highly

12    deferential standards making review of a habeas claim "doubly" deferential.  *Id.*

13    "When § 2254(d) applies, the question is not whether counsel's actions were

14    reasonable.  The question is whether there is any reasonable argument that counsel

15    satisfied *Strickland*'s deferential standard." *Id.*

16         The last reasoned state decision addressing Flook's ineffective assistance of

17    counsel claim was the Court of Appeals on direct appeal.

18    Flook first contends his counsel was deficient for not asking him on
     direct examination about his prior convictions, which allowed the State
19    to bring up the convictions on cross-examination.  Even if defense
     counsel should have questioned Flook about his prior convictions, we
20    do not see how this resulted in sufficient prejudice to change the
     outcome of the trial.  The video evidence was damning.  Flook had no

credible explanation as to who else had access to the attic to shoot the video of A.S. bathing and who else would hide the evidence in his truck. The minimal prejudice resulting from his prior convictions not being drawn out on direct did not change the outcome of the trial.

. . .

Flook finally contends his counsel was deficient for objecting to the State asking A.S. a question that called for a narrative response. The trial court agreed with defense counsel and sustained the objection. The State then asked leading questions. Defense counsel again objected. The trial court overruled the objection.

The leading questions disclosed prior incidents of Flook: (1) showing A.S. some pornographic cartoons (cartoon characters having sex), (2) once asking A.S. to sit on his lap, (3) telling A.S. that her mother had sex toys, and (4) telling A.S. that he had his own porn site.

The third and fourth items certainly were prejudicial. But defense counsel's initial objection was legally correct and did not necessarily result in prejudice. Without the objection, A.S. may well have recalled the two more serious items. Also, without the objection, the trial court had authority to permit the State to ask leading questions to help jog a young witness's memory. *State v. Canida*, 4 Wn. App. 275, 279, 480 P.2d 800 (1971).

ECF No. 8-1 at 456-457.

Flook contends the Court of Appeals unreasonably determined the facts in addressing his first claim of ineffective assistance of counsel by only considering the thumb drive in finding the *Strickland* prejudice test unsatisfied. ECF No. 14 at 16. Flook argues the Court of Appeals failed to consider the circumstantial nature of the state's evidence and evidence that called into question A.S.' credibility. ECF No. 14 at 16. However, none of the evidence Flook points to calls into

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 37

1   question the reasonableness of the Court of Appeals' determination that the video

2   evidence was in fact damning to Flook's case based on the circumstances

3   surrounding where it was filmed from and where it was found.  Nor does Flook

4   demonstrate that direct examination of Flook's prior convictions would have

5   changed the result of the proceedings even considering the circumstantial and

6   credibility evidence.  The Court of Appeals did not unreasonably determine the

7   facts as to Flook's first ineffective assistance of counsel claim.

8        Flook next argues that the Court of Appeals unreasonably applied the law in

9   concluding his counsel's objection to the prosecution asking A.S. a question

10  calling for a narrative response "did not necessarily result in prejudice" because

11  A.S. could have recalled the events anyway and the trial court could have

12  permitted leading questions despite the objection.  ECF No. 14 at 17.  Flook asserts

13  he need only show "there is a reasonable probability that, but for counsel's

14  unprofessional errors, the result of the proceeding would have been different."  *Id.*

15  (citing *Strickland*, 466 U.S. at 694).

16       Flook's argument is without merit.  First, contrary to Flook's assertion

17  otherwise, the Court of Appeals did not conclude a deficiency existed and noted

18  defense counsel's initial objection was legally correct.  ECF No. 8-1 at 457.

19  Second, the reasoning that even if Flook's counsel had been deficient in its

20  objection it did not result in prejudice, was not an unreasonable application of the

1  law because *Strickland* requires a defendant show prejudice from his counsel's

2  deficient performance. *Strickland*, 466 U.S. at 694. Furthermore, the state court's

3  reasoning on what "may well have" and "could have" occurred without the

4  objection was a reasonable determination that Flook did not demonstrate a

5  reasonable probability that the outcome would have been different but for the

6  objection. Accordingly, the Court denies Claim Five.

7  **Claim Six: Motion to Suppress the Thumb Drive**

8  Flook argues the trial court's denial of his motion to suppress the thumb

9  drive containing the video evidence violated his Fourth, Fifth, and Fourteenth

10  Amendment rights. ECF No. 1 at 33. Respondent argues Flook has failed to state

11  a cognizable claim for habeas relief pursuant to *Stone v. Powell*, 428 U.S. 465

12  (1976) because the state courts provided Flook an opportunity for full and fair

13  litigation of his Fourth Amendment claim. ECF No. 7 at 63-66.

14  The Supreme Court held in *Stone* "that where the State has provided an

15  opportunity for full and fair litigation of a Fourth Amendment claim, a state

16  prisoner may not be granted federal habeas corpus relief on the ground that

17  evidence obtained in an unconstitutional search or seizure was introduced at his

18  trial." *Stone*, 428 U.S. at 494. *See also Caldwell v. Cupp*, 781 F.2d 714, 715 (9th

19  Cir. 1986) ("All *Stone v. Powell* requires is the initial opportunity for a fair

20  hearing. Such an opportunity for a fair hearing forecloses this court's inquiry,

1    upon habeas corpus petition, into the trial court's subsequent course of action,

2    including whether or not the trial court has made express findings of fact.")

3    (internal citations omitted).

4          As Respondent observes, Flook moved to suppress the thumb drive in a CrR

5    3.6 motion three days before trial which the trial court denied finding both that the

6    motion was untimely and that Flook did not have a privacy interest in the thumb

7    drive nor automatic standing under state law to challenge its search and seizure.

8    ECF No. 8-3 at 186-190.  The Washington Court of Appeals affirmed on direct

9    review on the basis the trial court properly denied the motion to suppress as

10    untimely but did not address Flook's Fourth Amendment argument.  Flook again

11    presented his unlawful search and seizure argument to the Washington Supreme

12    Court where his petition was denied review.  ECF No. 8-1 at 484-485, 513.

13          The Court finds Flook was provided an opportunity for full and fair

14    litigation of his Fourth Amendment claim in state court.  Flook argues his claim

15    was not fully or fairly litigated because the Court of Appeals failed to specifically

16    address his Fourth Amendment claim and apply the correct standard and law in its

17    ruling.  However, the authority Flook relies on is non-binding, moreover the Ninth

18    Circuit has explicitly stated "[t]he relevant inquiry is whether petitioner had the

19    opportunity to litigate his claim, not whether he did in fact do so or even whether

20    the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th

1    Cir. 1996).  Flook's Fourth Amendment claim is therefore procedurally barred

2    from federal habeas review.

3         Flook does not provide any argument with regard to the alleged violations of

4    his Fifth and Fourteenth Amendment rights.  Furthermore to the extent Flook

5    implies in his reply briefing that a bar on his Fourth Amendment claim would not

6    bar a Sixth Amendment ineffective assistance of counsel claim due to the untimely

7    motion to suppress, such argument is also without merit.  ECF No. 14 at 20.  Flook

8    does not present a Sixth Amendment claim tied to the thumb drive in his habeas

9    petition.  Claim Six is therefore denied.

10         **Claim Seven: Improper Witness Testimony**

11         Flook argues that three witnesses improperly opined on the ultimate issue of

12    Flook's guilt during the trial in violation of his Sixth Amendment right to a jury

13    trial.  ECF Nos. 1 at 34-35, 2 at 22-23.  Flook challenges Sheriff Myers' testimony

14    that while he was interviewing Flook, Flook appeared to be uncomfortable and it

15    seemed obvious he did not want to be there (ECF No. 8-3 at 329, 333);

16    Motenegro's testimony that she told Flook's aunt she believed A.S.'s allegations

17    (ECF No. 8-3 at 607); and the child counselor, Nicole Konen's testimony that she

18    concluded that what A.S. had described to her "sounded like sexual abuse" and

19    "the sexual abuse that had occurred in the previous months" (ECF No 8-3 at 249,

20    250).

1    The last reasoned state court decision addressing this claim was by the Court

2  of Appeals on direct appeal.  ECF No. 8-1 at 451-455, 460-462.  The Court of

3  Appeals found Sheriff Myers' testimony to not be improper opinion testimony

4  because it was an observation of Flook's demeanor, not on whether he believed

5  Flook or found his answers evasive.  *Id.* at 454-455.

6    In addressing Montenegro's challenged testimony, the Court of Appeals also

7  concluded there was no constitutional or evidentiary error.

> Ms. Montenegro did not testify she believed A.S.  Instead, she testified
> she told Flook's aunt she believed A.S.  Even if this testimony was
> sufficiently explicit to be reviewable, we do not believe there was any
> error.
>
> The State did not elicit Ms. Montenegro's opinion on direct
> examination.  Rather, the State elicited it on redirect examination, only
> after Flook's cross-examination left the jury with the impression Ms.
> Montenegro had told Flook's aunt she did not believe A.S.
>
> When a party raises a material issue, they do so under the assumption
> the rules will permit cross-examination or redirect examination into the
> same matter.  *State v. Crow*, 8 Wn. App. 2d 480, 505, 438 P.3d 541,
> *review denied*, 193 Wn.2d 1038, 449 P.3d 664 (2019).  This allows a
> party to clarify an issue that would otherwise be left in the air for the
> finder of fact and keeps a party from taking advantage of half-truths.
> *Id.*
>
> Flook asked questions that implied Ms. Montenegro had told Flook's
> aunt she did not believe A.S.  We consider this "'other evidence before
> the trier of fact.'" *Montgomery*, 163 Wn.2d at 591 (quoting *Demery*,
> 144 Wn.2d at 759).  This evidence permitted the State to ask on redirect
> what Ms. Montenegro actually told Flook's aunt.

ECF No. 8-1 at 453.

1       Finally, the Court of Appeals concluded Nicole Konen's testimony was not

2  improper opinion testimony because "Ms. Konen's statements were general about

3  abuse having had occurred and did not touch on whether A.S.'s account of the

4  abuse was what had happened." *Id.* at 462.

5       After reviewing the decision and record presented, the Court finds the Court

6  of Appeals decision was not contrary to or involved an unreasonable application of

7  clearly established federal law and did not make an unreasonable determination of

8  the facts. 28 U.S.C. § 2254. Flook has failed to demonstrate otherwise.

9  **Claim Eight: Cumulative Error**

10      Flook finally argues that even where no single error alone merits reversal,

11  the combined effects of any errors do. ECF No. 2 at 23-25. "Cumulative error

12  applies where, 'although no single trial error examined in isolation is sufficiently

13  prejudicial to warrant reversal, the cumulative effect of multiple errors [has] still

14  prejudice[d] a defendant.'" *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th

15  Cir. 2000) (quoting *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.

16  1996)).

17      Flook brought cumulative error claims on direct appeal and in his PRP. His

18  cumulative error claims on direct appeal asserted cumulative prejudice from errors

19  in claims corresponding to Claims Three, Five, Six and Seven. ECF No. 8-1 at

20  330-332, 485. And his cumulative error claim in his PRP asserted cumulative

1    prejudice from errors in claims corresponding to Claims One, Two, and Three.

2    ECF No. 8-1 at 596-597.  Flook's claims were not addressed by a state court on

3    direct review, but the Court of Appeals did address the cumulative error claim

4    presented in Flook's PRP.

5        Flook's final argument is that he is entitled to reversal based on the cumulative error doctrine because he was substantially prejudiced by
6        the collective alleged errors.  We disagree.

7        "The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors,
8        taken individually, would be harmless." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014), *abrogated on other grounds*
9        *by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018).  "The test to determine whether cumulative errors require reversal of a defendant's
10        conviction is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial." *Cross*, 180 Wn.2d
11        at 690.

12        This doctrine does not apply because the only error Flook has established in this petition is an evidentiary error.  He fails to show any
13        additional defect in the proceedings.  Additionally, he fails to argue or explain how he was substantially prejudiced under the totality of the
14        circumstances by admission of the evidence.

15    ECF No. 8-2 at 71-72.

16        Flook fails to show the Court of Appeals' decision was contrary to or an

17    unreasonable application of clearly established law or an unreasonable

18    determination of the facts.  To the extent cumulative error of the remaining Claims

19    not addressed by a state court require a *de novo* review, Flook has not

20    demonstrated multiple errors that are cumulatively prejudicial.  Accordingly,

ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS ~ 44

Claim Eight is denied.

## CERTIFICATE OF APPEALABILITY

Flook requests a certificate of appealability to allow him to present his claims to a reviewing court. ECF No. 2 at 25. Respondent opposes Flook's request. ECF No. 7 at 72. The standard for issuance of a certificate of appealability calls for a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). A petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (internal quotations omitted).

For the reasons stated above, the Court finds that Flook's claims do not justify the issuance of a certificate of appealability. Flook has not made a substantial showing of the denial of a constitutional right or that issues presented deserve encouragement to proceed further.

//

//

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  The Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, ECF No. 1, is **DENIED and DISMISSED with prejudice**.

2.  The Court further certifies that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability is **DENIED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel and **CLOSE** the file.

DATED June 18, 2025.



THOMAS O. RICE
United States District Judge